UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                              )
                                    )
    OLLIE SUE GRUNAUER            )     Case No. 10-11502-SSM
                                    )     Chapter 13
               Debtor          )

**MEMORANDUM OPINION AND ORDER**

The chapter 13 trustee, Thomas P. Gorman, has objected to confirmation of the debtor's repayment plan because the debtor—whose plan would pay nothing to unsecured creditors—declined to endorse an addendum to the confirmation order agreeing to turn over income tax refunds during the term of the plan. A hearing was held on May 12, 2010, at which the court also heard argument on the trustee's motion to dismiss the case. The motion to dismiss was denied, and the court took the objection to confirmation under advisement. Because the plan fully satisfies the projected disposable income test as applicable to above-median income debtors, the objection to confirmation will be overruled.

Background

The debtor, Ollie Sue Grunauer, is a government employee. She filed a voluntary petition in this court on March 2, 2010, for adjustment of her debts under chapter 13 of the Bankruptcy Code. On her schedules of monthly income and expenses (Schedules I and J), she reported take home pay of $6,478 per month and living expenses of $5,298 per month, for a surplus of $1,179 with which to fund a repayment plan. On her Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form B22C or

"means test form"), she reported current monthly income (CMI) of $10,993, which on an annualized basis considerably exceeds the state-wide median income for a family of the same size. She claimed deductions under the chapter 13 "means test" of $11,272, for a calculated monthly disposable income of *minus* $279.

Her plan, filed on April 5, 2010, proposes to pay the chapter 13 trustee $1,182 per month for 60 months, for a total of $70,920. From this would be paid the trustee's statutory commission, a $43,804 priority tax claim, and $20,062 in mortgage arrears on the debtor's residence, with nothing, or essentially nothing, being left over for unsecured creditors. The trustee's objection, filed on April 29, 2010, asserts that the plan should not be confirmed because the debtor failed to cooperate with the trustee by refusing to sign an Addendum to the confirmation order that would require her to turn over refunds in excess of $250 during the plan period to the trustee as additional plan funding.[1] In response, debtor's counsel argued that under the chapter 13 means test as applicable to above-median income debtors, tax refunds simply did not figure into the disposable income calculation, and he represented that, in any event, the debtor had not historically received tax refunds.

### Discussion

#### A.

As framed by the trustee, the issue is whether debtors whose plans do not pay unsecured debts in full should be required, as a condition of confirmation, to turn over income tax refunds

---

[1] The trustee's motion to dismiss similarly asserted that the debtor's refusal to sign the addendum constituted a failure to cooperate with the trustee, in violation of § 521(a)(3), Bankruptcy Code. By separate order, the court ruled that mere refusal to commit tax refunds to the plan was possibly relevant to the disposable income analysis but was not grounds for dismissal of the case.

2

received during the term of the plan. A great many of the confirmation orders tendered by the trustee have an attached Addendum, signed by the trustee, the debtor, and debtor's counsel, which requires the debtor to furnish the trustee with copies of federal and state income tax returns each year during the plan and to pay over to the trustee any federal and state income tax refunds in excess of $250 per annum.[2] It is the refusal of debtor's counsel to sign the Addendum in this case that give rise to the present controversy.

The Addendum, it must be stressed, is not a required provision in either the standard form of plan or standard form of confirmation order used in this district.[3] By its express terms, it is a consent *addition* to the standard confirmation order. Its apparent purpose is to resolve or forestall a disposable income objection by the trustee in those cases in which the plan does not provide for full payment of unsecured claims. At the hearing, the trustee explained that the Addendum—the form and use of which he inherited from his predecessor in office—is an efficient administrative tool used to prevent debtors from increasing their tax withholdings so as to decrease their disposable income and the amount they were required to pay into their plan. The trustee argued that if debtors withheld more from their earnings than they would actually owe at tax time, the tax refunds simply represented disposable income that had been squirreled away and should be paid into the plan. Without the Addendum, the trustee argued, he would be put to the considerable administrative burden of having to analyze each case to determine

---

[2] The $250 figure is apparently intended to reflect the usual cost of professional income tax return preparation.

[3] This district and the Western District of Virginia require use of a common form of chapter 13 plan. Loc. Bankr. R. 3015-2(A) & Exh. P. 1-10 (Bankr. E.D. Va., November 6, 2009); Loc. Bankr. R. 3015-1(A)(2) (Bankr. W.D. Va., December 1, 2009). By custom, both districts also use the same standard form of confirmation order.

3

whether debtors were over-withholding and then bringing either objections to confirmation or motions to modify confirmed plans.

B.

The purpose of chapter 13 is to allow a financially distressed debtor to repay her creditors over a three to five-year period under court protection and court supervision. Priority claims must be paid in full, as must secured claims (with interest) if the debtor intends to keep the collateral. §§ 1322(a)(2) & 1325(a)(5)(B)(ii), Bankruptcy Code. Unsecured claims, however, may be paid at less than 100 cents on the dollar provided (1) the plan is proposed in good faith; (2) the case has been filed in good faith; (3) unsecured creditors are receiving at least as much as they would receive in a chapter 7 liquidation, and (4) the debtor devotes her projected disposable income to the plan over the applicable three or five-year commitment period. *Id.* § 1325(a)(3), (a)(4), (a)(7) & (b)(1).

The disposable income test for chapter 13 plans has existed since 1984. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, § 317. Until enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 ("BAPCPA"), it simply required that a chapter 13 debtor whose plan did not pay claims in full devote his or her "projected disposable income" to the plan for 36 months. Enforcement of this requirement prior to BAPCPA traditionally centered on an analysis of the schedules of monthly income and expenses (Schedules I and J) filed by the debtor, with the court making adjustments where the amounts shown were not substantiated or, in the case of expenses, were determined to be unreasonable, unnecessary or excessive.

BAPCPA did not change this paradigm for debtors whose household income is less than the state-wide median income for a household of the same size.  For above-median income debtors, however, two significant changes were made.  First, the period the debtor was required to pay his or her projected disposable income into the plan ("the commitment period") was increased from 36 months to 60 months, unless claims could be paid in full in a shorter period. § 1325(b)(4)(A)(ii), Bankruptcy Code.  Second, disposable income was to be calculated using the "means test" methodology implemented by BAPCPA for determining whether a chapter 7 filing was presumed to be an abuse.  *Id.* § 1325(b)(3).  This computation begins with "current monthly income" ("CMI"), which is an arithmetic average of the income (with certain exclusions, such as social security benefits) received in the six months *prior* to the filing of the bankruptcy petition. § 101(10A), Bankruptcy Code. *In re Degrosseilliers*, No. 08-10942, 2008 WL 2725808, (Bankr. E.D. Va. July 11, 2008), *In re Mitchell*, No. 06-11394, 2007 WL 1075195 (Bankr. E.D. Va. April 4, 2007).  Deducted from CMI are the allowances for food, clothing, housing, transportation, health care, and other living expenses specified in the Internal Revenue Service collection standards as well as certain additional deductions, including payments on secured debt and federal, state, and local taxes during the 60 months after the filing of the petition. § 707(b)(2)(A)(i)-(iv), Bankruptcy Code.[4]

---

[4] Taxes are not specifically mentioned in the statutory text; however, they fall within the category of "Other Necessary Expenses issued by the Internal Revenue Service."  § 707(b)(2)(A)(i)(I), Bankruptcy Code; *see* Internal Revenue Manual § 5.15.1.10, *available at* http://www.irs.gov/irm/index.html (visited June 7, 2010).

C.

For a below-median income debtor, the court agrees that anticipated income tax refunds would generally constitute disposable income. *Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1202 (10th Cir. 2003) (holding that tax refunds are disposable income); *In re Raybon*, 364 B.R. 587, 591 (Bankr. D. S.C. 2007) (same); *In re Cleaver*, 426 B.R. 390, 394-95 (Bankr. D. N.M. 2010) (same). Putting aside special situations such as refunds flowing from so-called refundable credits such as the Earned Income Credit, refunds by their very nature result from more money being withheld from a debtor's pay than is needed to pay the taxes actually owed. There is no more reason why a debtor, in computing projected disposable income, should be able to insulate earnings by parking them temporarily with the federal or state government until tax time than by putting them aside in a bank account or cookie jar.

Of course, where a debtor has no history of refunds and there is no other reason to believe a debtor is having too much withheld, the disposable income test would not be implicated, and thus there would be no reason for a trustee to seek payment of tax refunds. But where there is a reasonable basis to find that a debtor is over-withholding, the trustee's proposed Addendum is a pragmatic way to capture the excess disposable income without requiring the debtor to go through the exercise of adjusting his or her withholdings or, more problematically, requiring the debtor to make plan payments based on what withholdings should be rather than what they actually are. The latter approach runs the substantial risk of leaving the debtor who fails to adjust withholdings strapped in terms of meeting normal living expenses.[5] And adjusting

---

[5] For instance, in *Raybon* the trustee objected to confirmation of the debtor's plan alleging that the debtor was not committing her disposable income to it when she historically received between $5,000 and $6,000 in tax refunds a year and there was no provision in the plan for

withholdings is not without its own problems, particularly for debtors who itemize deductions. If incorrect assumptions result in too little being withheld, the debtor might be faced with having to write a large check at tax time, which could threaten the debtor's ability to make plan payments. Simply paying over the tax refund allows a debtor to continue with his or her historic withholdings without fear of unpleasant surprises at tax time. Consequently, in many cases it will make sense for debtors to avoid a contested confirmation hearing to resolve whether withholdings are correct by simply agreeing, as the trustee requests, that income tax refunds over some threshold level be turned over to the trustee.

D.

The court does agree with the debtor, however, that tax refunds, as such, would not fall within the definition of projected disposable income for an above-median income debtor, since disposable income is determined by application of the chapter 13 "means test." Of course, if the debtor receives a tax refund in the 6 months preceding the filing of the petition, the amount of the refund must be included in calculating CMI. And the claimed deduction under the means test for federal, state, and local taxes as Other Necessary Expenses must reflect the taxes that debtor actually incurs (not the withholdings). But provided those requirements are met, payment of tax refunds into the plan would not be necessary in order to satisfy the projected disposable income test. Here, the trustee has not alleged that the debtor received tax refunds during the six-month

---

turning over the refunds. 364 B.R. at 587. The trustee argued that the debtor should increase plan payments by $294.00 a month to account for the expected tax refund. The court declined to order an increase in the monthly payment but instead required the debtor to provide the trustee with copies of her federal income tax returns within 10 days of filing and to submit all tax refunds to the trustee within 20 days of receiving them. *Id.* at 591-592.

CMI look-back period, nor has he alleged that what the debtor has deducted on line 30 of Form B22C amounts in excess of the taxes that the debtor actually incurs. Since the trustee has not challenged the debtor's calculation of her monthly disposable income under the means test as a *negative* number, the court cannot find that the debtor is failing to devote her projected disposable income to the payment of unsecured claims under the plan or that she needs to pay over income tax refunds in order to satisfy the disposable income test.

E.

While the court will overrule the trustee's objection, the court does emphasize that, with or without the Addendum, the trustee may require the debtor to furnish copies of federal and state income tax returns during the term of the plan. § 521(f)(1), Bankruptcy Code. For that reason, the court will direct the debtor to furnish tax returns to the trustee during the period of the plan. To the extent that the tax return discloses a substantial and unanticipated change in the debtor's financial situation, the trustee may seek modification of the plan to increase payments to the unsecured creditors, who are currently receiving nothing. *Id.* § 1329(a)(1); *Arnold v. Weast (In re Arnold)*, 869 F.2d 240 (4th Cir. 1989). Finally, nothing in this opinion should be read as discouraging use of the Addendum, or a form of confirmation order with similar language, as a pragmatic and efficient means of resolving disposable income objections in those cases in which the trustee can make a showing that a debtor's withholdings exceed his or her expected tax liability. The court simply stresses that mere failure to agree to pay over tax refunds is not an independent basis for denying confirmation, and that the appropriate response to excessive withholdings is an objection under § 1325(b) for failure to pay projected disposable income into the plan.

## O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. The objection to confirmation is overruled.

2. The trustee shall submit a standard form of confirmation order.

3.  During the term of the plan, the debtor shall, within 14 days of filing her federal and state income tax returns, furnish a complete copy (including all schedules) to the trustee.

4. The clerk will mail a copy of this order, or give electronic notice of its entry to the parties listed below.

Date: _____          _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge


Copies to:

Ollie Sue Grunauer
15635 Winding Creek Drive
Dumfries, VA 22025
Debtor

Daniel M. Press, Esquire
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
Counsel for the debtor

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 trustee